# Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

D67365
T/htr

_____AD3d_____

-FILED-

NOV 2 2 2021

At _____M
GARY T. BELL, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

HECTOR D. LASALLE, P.J.
WILLIAM F. MASTRO
MARK C. DILLON
CHERYL E. CHAMBERS
ROBERT J. MILLER, JJ.

2021-00031                                                     OPINION & ORDER

In the Matter of Richard P. Liebowitz, an
attorney and counselor-at-law.

(Attorney Registration No. 5357702)

The respondent was admitted to the Bar at a term of the Appellate Division of the
Supreme Court in the Second Judicial Department on August 19, 2015. By order dated January 28,
2021, this Court directed the respondent to show cause why discipline should not be imposed upon
him pursuant to 22 NYCRR 1240.13, based on the misconduct underlying the discipline imposed
by an order of the United States District Court of the Southern District of New York, dated
November 25, 2020, as amended November 30, 2020, by filing an affidavit in accordance with 22
NYCRR 1240.13(b) with the Clerk of this Court.

> Catherine Sheridan, Hauppauge, NY (Michael Fuchs of counsel), for
> Grievance Committee for the Tenth Judicial District.
>
> Michael S. Ross, New York, NY, for respondent.

PER CURIAM.      By order of the United States District Court for the Southern District of New
York (hereinafter the Southern District), dated November 25, 2020, as amended November 30, 2020,
the respondent was immediately suspended from the practice of law in that court pending the
outcome of proceedings in that forum and the further order of the Southern District.

November 3, 2021                                                     Page 1.
                    MATTER OF LIEBOWITZ, RICHARD P.

<u>Southern District Proceedings</u>

The proceedings in the Southern District were initiated by a Statement of Charges dated August 5, 2020.

A.    <u>Statement of Charges</u>

The Statement of Charges alleged that the respondent engaged in a "pattern and practice" of failing to comply with court orders and making false statements to the court. In particular, in a copyright infringement action entitled *Sands v Bauer Media Group USA, LLC*, commenced in the Southern District under Docket No. 17-CV-9215(LAK) (hereinafter the *Sands* case), in which the respondent represented the plaintiff, it was alleged that the respondent moved to recuse the judge presiding over the action on the ground of bias, supporting the motion with his declaration in which he stated under the penalty of perjury that the plaintiff did not make a settlement demand in the action. The respondent made a similar statement in an accompanying memorandum of law. The Statement of Charges alleged that those representations were false and misleading, and that the respondent knew they were false when made, since at the outset of the case the respondent sent an email to his adversary in which he proposed a $25,000 settlement. Further, the respondent's associate made a $25,000 settlement demand at the initial conference in the case, which the respondent did not attend.

The Statement of Charges also alleged that in another Southern District copyright infringement action, entitled *Wisser v Vox Media, Inc.*, commenced in that court under Docket No. 19-CV-1445(LGS) (hereinafter the *Wisser* case), in which the respondent represented the plaintiff, the respondent's law firm, Liebowitz Law Firm (hereinafter LLF), served responses to the defendant's interrogatories, which the respondent certified. The responses included, inter alia, the plaintiff's verification of the answers and objections in which he purportedly swore that he read the answers and objections, he knew the contents thereof, and to the best of his knowledge, information, and belief, they were true and accurate. LLF affixed to that verification an electronic signature purporting to be that of the plaintiff. The Statement of Charges alleged that the verification was false and misleading, and the respondent knew that when it was filed. The plaintiff did not see the responses to the interrogatories before they were filed, the signature on the verification was not his, and he did not give explicit permission to anyone at LLF to sign the verification prior to filing it.

In addition, the Statement of Charges alleged that the respondent represented the plaintiff in a copyright infringement action entitled *Berger v Imagina Consulting, Inc.*, commenced

MATTER OF LIEBOWITZ, RICHARD P.

in the Southern District under Docket No. 18-CV-8956(CS) (hereinafter the *Berger* case). The *Berger* case was before Judge Cathy Seibel. By letter dated April 5, 2019, the defendant requested a discovery conference. Judge Seibel granted the request, scheduled the conference for the morning of April 12, 2019, and ordered the plaintiff to respond to the defendant's letter by April 9, 2019, which was done. On April 9, 2019, the respondent's grandfather died. The conference took place as scheduled on April 12, 2019; however, the respondent did not appear and did not call or email the court or his adversary to explain his failure to attend. He did not send an attorney from his firm to appear for him.

Accordingly, Judge Seibel ordered the respondent to show cause in writing, on or before April 17, 2019, why he failed to appear for the conference and why he should not be required to compensate the defendant for the counsel fees it incurred for the time spent for the appearance. Judge Seibel rescheduled the conference for April 18, 2019.

The respondent sent a letter to the Southern District dated April 15, 2019, stating that he missed the conference due to a "death in the family," which was an "unexpected urgent matter" requiring his attention. Moreover, he stated that he would be out of the office on the next conference date of April 18, 2019, and he asked to appear by phone.

The April 18, 2019, conference was held by phone. The Statement of Charges alleges that at that time, the respondent falsely represented that his grandfather died on the morning of April 12, 2019. He apologized for not informing his adversary and the court. The Statement of Charges further alleges that the statement was knowingly false and misleading.

Judge Seibel directed that by May 1, 2019, the respondent furnish evidence or documentation regarding the date of death and the manner in which the respondent was notified of the death. The Statement of Charges alleges that by letter dated May 1, 2019, the respondent repeated the false representation that his grandfather died on April 12, 2019, and that he was needed to assist with necessary arrangements. In an endorsement thereon, Judge Seibel wrote that the May 1, 2019 letter was not responsive to the court's previous instruction, since it did not furnish the requested documentation; Judge Seibel allowed the respondent until May 3, 2019, to supplement his letter.

On May 3, 2019, the respondent filed a notice of settlement of the *Berger* case. On May 7, 2019, Judge Seibel advised that the respondent had failed to document the death in his family that purportedly caused him to miss the conference, and gave the respondent yet another extension,

to May 9, 2019, to do so, noting that even if the defendant in the *Berger* case had been made whole for expenses incurred for the April 12, 2019 conference, she still had to satisfy herself that there was no need for a disciplinary or other inquiry.

On May 9, 2019, the respondent filed a declaration in which he "re-certif[ied]" that the statements in his letters dated April 15, 2019, and May 1, 2019, were true, and he further stated that he believed his declaration satisfied his obligation to the court. On May 13, 2019, Judge Seibel responded that the respondent's May 9, 2019 declaration did not resolve the matter. In light of the issues pertaining to his credibility and his failure to provide any information or documentation regarding his grandfather's death, his declaration did not satisfy his obligation to the court. Judge Seibel ordered the respondent to show cause why he should not be referred to the Southern District's Committee on Grievances, and to include in his response documentation or other evidence demonstrating that there had been a death in his family that prevented him from attending the April 12, 2019 conference and from providing timely notice to the court and his adversary that he could not attend.

The respondent did not comply. Instead, on May 16, 2019, he submitted a declaration repeating his belief that his statements in his April 15, 2019, May 1, 2019, and May 9, 2019 submissions fulfilled his obligations in response to the court's order to show cause.

On July 26, 2019, Judge Seibel ordered the respondent, under penalty of contempt, to furnish a copy of his grandfather's death certificate to document his claim that he could not attend the April 12, 2019 conference, nor provide timely notice to the court or his adversary, due to the death in his family. In response, on August 12, 2019, the respondent submitted another declaration, stating once again that he believed his prior correspondence was sufficient, and that he should not be required to provide his grandfather's death certificate because that was a "personal matter."

On August 19, 2019, Judge Seibel responded, acknowledging the personal nature of a death in the family; however, the issue of the respondent's candor before the court was professional in nature. Judge Seibel offered the respondent the opportunity to submit the death certificate directly to her chambers to maintain privacy. In the event the respondent did not provide the requested documentation by August 26, 2019, he would be held in contempt and subject to sanctions, including monetary sanctions and referral to the Committee on Grievances.

Rather than provide the death certificate, on August 26, 2019, the respondent submitted another declaration, in which he contended that he was not in contempt because the

court's request for the death certificate was unlawful, as it "likely constitutes a usurpation of judicial authority or a breach of judicial decorum." He further contended that his prior submissions complied with the court's orders, there was no basis to impose monetary sanctions, and Judge Seibel's accommodation to maintain the privacy of the death certificate was insufficient.

In a September 27, 2019 endorsement on the August 26, 2019 declaration, Judge Seibel noted, inter alia, that the respondent had repeatedly refused to provide his grandfather's death certificate, even after it was made clear to him that his declarations were insufficient and the court offered to accept the death certificate directly, without a public filing, to maintain privacy. Further, the respondent did not allege or show an inability to comply with the court's directives. As a result, Judge Seibel declared the respondent to be in contempt of court and ordered that if he failed to provide the requested documentation by October 2, 2019, he would be subject to a sanction of $100 each business day pending his compliance. In addition, the court warned that additional or different sanctions would be considered in the event that sanction was insufficient to ensure compliance.

On October 2, 2019, the respondent wrote to Judge Seibel and asked for an in-person conference to discuss the court's September 27, 2019 order, as well as a stay of that order until the conference could be held. His request was denied. The respondent repeated his request by letter the next day, and his second request was denied. The court ordered the respondent to refrain from submitting similar requests unless he explained what purpose would be served by a conference, and offered a justification for a stay. He had not done so in his prior requests. Judge Seibel notified the respondent that his first payment pursuant to the contempt sanction was due on October 7, 2019.

On October 7, 2019, the respondent submitted a letter asking for a two-week extension to provide his grandfather's death certificate and requesting a stay of the monetary sanction in the meantime. The letter was submitted at 8:34 p.m., after the clerk's office had closed. Judge Seibel denied the request.

By November 1, 2019, the respondent had not made any payments, and thus was in contempt of Judge Seibel's August 19, 2019 and September 27, 2019 orders. As a result, Judge Seibel increased the monetary sanction to $500 per day, effective November 6, 2019, until the respondent complied with the courts' prior orders. The respondent also was ordered to appear before Judge Seibel on November 13, 2019, and to show cause why he should not be incarcerated until he complied with her orders.

At that point, the respondent retained counsel to represent him in the contempt

proceedings, and on November 11, 2019, he sent a letter to Judge Seibel admitting that he failed to carry out his responsibilities to the court and to his adversary. He also admitted that his grandfather died on April 9, 2019, and was buried the same day. With this letter, the respondent submitted a copy of the death certificate, confirming that his grandfather died on April 9, 2019. The respondent attributed his "lapse" to his grandfather's death, which produced a "brief period of overwhelming grief and dysfunction." He asked that Judge Seibel vacate her contempt orders, declare his financial penalties satisfied, and permit him to continue to practice before the court.

At the November 13, 2019 hearing on the order to show cause, Judge Seibel declined to disturb the contempt findings based on the respondent's failure to produce the death certificate and failure to pay contempt sanctions. Judge Seibel found that the respondent willfully failed to comply with lawful court orders. She further found that the respondent no longer was in contempt since he produced the death certificate and paid $3,700 in sanctions. She referred the respondent to the Southern District Committee on Grievances.

Based on the foregoing, the Statement of Charges alleged that the respondent violated a number of the New York Rules of Professional Conduct (22 NYCRR 1200.0). Specifically, the Statement of Charges alleged that the respondent violated rule 3.3(a)(1) ("[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"), rule 3.4(c) ("[a] lawyer shall not . . . disregard or advise the client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but the lawyer may take appropriate steps in good faith to test the validity of such rule or ruling"), and rule 8.4(c) ("[a] lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation"), (d) ("[a] lawyer shall not . . . engage in conduct that is prejudicial to the administration of justice"), and (h) ("[a] lawyer shall not . . . engage in any other conduct that adversely reflects on the lawyer's fitness as a lawyer").

B.    Southern District's August 5, 2020 Order to Show Cause

In an order dated August 5, 2020, the Southern District directed the respondent to show cause why discipline should not be imposed upon him based on the Statement of Charges. The court further directed that the response had to include a statement as to whether the respondent had been disciplined or sanctioned by any bar or court, and if so, he was to annex a copy of each document imposing such discipline. In addition, the respondent was directed to include a statement as to whether he had ever been ordered by any court or bar disciplinary authority to show cause why

he should not be disciplined or sanctioned and, if so, to submit a copy of each such order and his response, if any, thereto.

In response, the respondent submitted a declaration dated September 25, 2020. In describing himself, he stated that he became interested in photography at an early age. Ultimately, he became a member of the New York Press Photographers Association. Through the contacts he developed within the photography community, he learned that photographers' work often was "stolen," and he recognized a need for them to get paid for their work. He decided to pursue a career in copyright law, and shortly after he was admitted to practice, he opened his law firm, LLF, basically devoting himself to helping photographers obtain compensation from major media companies and others who used the photographers' work without consent or license.

The respondent stated that he opened his firm with no prior experience or training in running a legal practice. He took on many cases and pursued a large number of cases simultaneously. The venue for his practice primarily was federal court. He could take on many cases since many of them settled early, typically in the "low thousands of dollars." The respondent would take a contingency fee, since the high cost of litigation and the often limited amount of recovery made it financially infeasible for individual artists to seek relief any other way.

According to the respondent, he represented more than 1,200 clients in at least 2,500 federal actions around the country. His firm is often "stretched thin," facing the "constant challenges of an unpredictable and geographically scattered caseload." As he put it, high-volume litigation is "necessary to enforce the rights of content creators," but it comes with "increased risk of administrative failure."

The respondent advised that he had taken steps to improve his practice. He retained counsel to assist him; counsel spent a great deal of time improving the management of LLF. To that end, for example, at counsel's direction, the respondent bought practice management software. The respondent realized that he could not accept as many clients as he had in the past, and reduced his client intake by almost 50%.

In addition, the respondent stated that he had been sanctioned "numerous" times, and that caused him to "look inward." He began weekly counseling sessions with a psychologist, and came to realize that he rationalized his willingness to have "small" mistakes in his court filings based on the fact that he was doing "good" for his clients. He stated that he now understood that the statements he makes to a court must be accurate, and factual inaccuracies or errors must be promptly

November 3, 2021                                                                              Page 7.

MATTER OF LIEBOWITZ, RICHARD P.

corrected. The respondent emphasized that he offered the foregoing by way of explanation, and not excuse.

The respondent then addressed the allegations in the Statement of Charges, beginning with the *Sands* case. The respondent stated that on September 12, 2017, he made a settlement demand by email on behalf of his client. Thereafter, at a conference on February 6, 2018, the respondent's associate made a settlement demand. The respondent stated that he believed that he subsequently discussed that demand with the associate, but he did not record that conversation and then forgot about it. In a submission to the Southern District on October 29, 2019, the respondent incorrectly stated that there had been no settlement demands, and in a submission made about three weeks later, he explained that his statement was incorrect. In response to the Statement of Charges, the respondent admitted that his statements that there had been no settlement demands made in the *Sands* case were false and misleading, but he denied knowing they were false when he made them. Instead, he attributed his false statements to "sloppiness and poor practice management." He did not intend to mislead the court; rather he "simply did not remember" the case's history. He was not properly managing his practice, and at the time, his firm was not tracking settlement demands in management software.

In response to the allegations regarding the *Wisser* case, the respondent admitted that the verification of the answers and objections to the defendant's interrogatories was false and misleading, but he denied that he knew the verification was false when he filed it with the Southern District. He admitted that his client had not read the answers and objections to the defendant's interrogatories, and did not verify that he knew their contents and that they were true and accurate. Nonetheless, the respondent claimed that, at the time, he believed he had his client's "implicit authority" to affix his client's electronic signature to the verification. The respondent referred to an affidavit his client submitted in the *Wisser* case, in which his client stated, among things, that the respondent had his implied authority to sign documents on his behalf by virtue of their engagement letter and the "mutual trust" arising from their long-standing attorney/client relationship. The respondent stated that, at the time, he did not recognize the significance of affixing his client's signature to a verification acknowledging that his client had read a document that, in fact, his client had not read. With the benefit of "hindsight" he now understood that he acted improperly. He apologized to the court. The respondent stated that he had no improper motive and the defendant in the *Wisser* case was not prejudiced.

As for his conduct before Judge Seibel in the *Berger* case, the respondent admitted, among other things, that his statement about the date of his grandfather's death was false and misleading, but he denied knowing that the statement was false when he made it. He claimed that in response to the court's questions at the April 18, 2019 conference, he mistakenly identified April 12, 2019, as opposed to April 9, 2019, as the date his grandfather died, and he repeated that error in subsequent submissions to the court. He asserted that he did not intentionally lie about the date; however, he stated that he made no excuses for doing so or for his "improper resistance" to the court's inquiries. It was an "emotional time" for him, and he was "indignant" that the court "seemingly" did not believe he was truthful about his grandfather's death and wanted documentation about it. He did not want to produce the evidence and, "emotionally, irrationally and improperly," he resisted. After he made his mistake about the date, he did not double check, and he continued to identify the incorrect date in subsequent communications and filings with the court. Although he now realized that he should have promptly complied with the court's request for documentation and confirmed the correct date of his grandfather's death, at the time he was "angry" that his grandfather died, and he "deflected [his] anger toward the Court."

The respondent apologized to the Southern District and the Committee on Grievances for challenging Judge Seibel's inquiries and arguing that she was "usurping her judicial authority." He attributed his reaction to his "youth and inexperience," and pointed out that his counsel's November 11, 2019 letter to the court made no excuses for his admittedly improper conduct.

As required by the Southern District's order to show cause, the respondent detailed the sanctions that previously had been imposed on him or his firm. He listed 19 in all, some of them including attorney's fee awards, imposed over the period from March 2018 to August 2020. The majority were imposed in the Southern District (12 in all), but sanctions also were imposed on him or LLF in the United States District Courts for the Eastern and Northern Districts of New York (once in each), the District of Colorado (twice), the Eastern District of Missouri (once), the Northern District of California (once), and the Southern District of Illinois (once). The monetary sanctions ranged from $100 to $103,517.49. The maximum attorney's fee he was directed to pay among the cases in the list was $100,008.13. In that same case he was sanctioned $10,000.

The conduct leading to the sanctions orders varied from such things as failure to serve initial disclosures, and failing to attend hearings, to commencing copyright infringement actions falsely representing that a photo was covered by a copyright registration certificate without

conducting a pre-action factual investigation of that issue. In his declaration, the respondent attributed most of his lapses to "sloppiness and administrative failures," and denied any "bad faith."

The respondent advised that he was the subject of investigations in New York by the Grievance Committee for the Tenth Judicial District, and the Committee on Conduct of the United States District Court for the District of Colorado. He previously was investigated by the State Bar of California; that matter was closed.

In addition, the respondent listed six cases in which he and/or LLF were directed to show cause why sanctions should not be imposed or why a case should not be dismissed as a result of his alleged misconduct. He stated that in those matters, sanctions ultimately were not imposed or the cases were not dismissed.

The respondent contended that his misconduct before the Southern District did not reflect a "pattern and practice of deception" as alleged in the Statement of Charges. He stated that, in the *Sands* case, he made an incorrect statement about whether a settlement demand had been made. At the time he made the statement, he did not recall that he had made such a demand approximately two years before, and forgot about his associate's demand. In the *Wisser* case, he affixed his client's electronic signature to a document believing he had the authority to do that, without realizing that he (the respondent) could not swear that his client had read a document that he had not actually read. In the *Berger* case, he told the court that his grandfather had died on the wrong date. He regretted his conduct. Nonetheless, he maintained that his conduct was not motivated by an improper purpose, and that he acted to further his clients' best interests, although sometimes in a "misguided fashion."

As for the other matters in which he had been found to have acted in a deceptive manner, the respondent pointed out that they were not part of the Statement of Charges. In any event, he claimed that they did not reflect a pattern of deception; rather, he offered more benign explanations for his conduct, in some instances attributing his lapses to "sloppiness" and "administrative failures." He denied that his conduct violated the Rules of Professional Conduct. In summation, the respondent asked the Southern District to understand that he didn't act out of "venality," but rather under the misguided belief that "sloppiness and mistakes can be justified by representing deserving clients." He requested that his matter be referred to a hearing at which all the facts and mitigating evidence could be heard.

November 3, 2021                                                                 Page 10.

MATTER OF LIEBOWITZ, RICHARD P.

C.     The Southern District's Order

In an order dated November 25, 2020, as amended November 30, 2020, the Southern

District Committee on Grievances stated, in pertinent part, as follows:

> "After careful deliberation, the Committee is unanimously of the view that the
> Charges are strongly supported by the record. What is more, the Committee is
> unanimously of the view that interim disciplinary measures against Respondent must
> be put in place immediately.

> "The preliminary remedy of an interim suspension is available to the Committee in
> situations where it is appropriate to protect the public from future disciplinary
> violations of a respondent during the pendency of proceedings before this
> Committee. The record in this case—which includes Respondent's repeated
> disregard for orders from this Court and his unwillingness to change despite 19
> formal sanctions and scores of other admonishments and warnings from judges
> across the country—leads the Committee to the view that recurrence is highly likely.
> In short, in light of the nature and seriousness of the Charges, the strength of the
> record supporting those Charges, and the risk and danger of recurrence, the
> Committee concludes that an interim suspension of Respondent from the practice of
> law before this Court pending final adjudication of the charges against him is
> warranted. In the exercise of its discretion, the Committee will defer the final
> adjudication of the charges against Respondent currently pending before this
> Committee, as well as any other charges this Committee sees fit to bring against
> Respondent in the future as part of these disciplinary proceedings, until after
> Respondent has had an opportunity to present his defense to the Charges at an
> evidentiary hearing before a Magistrate Judge of this Court."

Accordingly, the respondent was suspended from the practice of law in the Southern District pending

the outcome of proceedings in that forum and further order of that court.

New York Proceedings

By order dated January 28, 2021, this Court directed the respondent to show cause

why reciprocal discipline should not be imposed upon him by virtue of the Southern District order

dated November 25, 2020, as amended November 30, 2020.

In his response, which was made by counsel, and includes the record that was before

the Southern District upon which it based its interim suspension, the respondent states that he regrets

the conduct in the three cases outlined in the Southern District's Statement of Charges, and

understands that he should have acted differently. He contends that he was not motivated by any

improper purpose; rather, he sought to advocate his clients' best interests, although "sometimes in

a misguided fashion."

The respondent argues, inter alia, that reciprocal discipline should not be imposed upon him based on the Southern District's interim order, because, as yet, he has not had a full and fair opportunity to litigate the matter in that forum. To impose such discipline on him now, before he has had an evidentiary hearing and has only made one submission, would deprive him of due process. He cites *Matter of Dunn* (24 NY3d 699), and contends that, until the proceedings against him in the Southern District have been concluded, any findings in that forum may not be used in an "offensive collateral estoppel application." He contends that, at this time, because the proceedings in the Southern District have not yet concluded, the proceedings in the Southern District were "so lacking in notice or opportunity to be heard as to constitute a deprivation of due process" (22 NYCRR 1240.13[b][1]).

Alternatively, the respondent argues that should reciprocal discipline be imposed, his misconduct warrants only a public censure.

Findings and Conclusion

We find no merit in the respondent's due process contentions. As opposed to the "cursory nature" of the sanctions hearing in *Matter of Dunn* (24 NY3d at 704), here the respondent was provided a full and fair opportunity to litigate the disciplinary matter before the Southern District imposed an interim suspension. The record confirms that, prior to imposing interim discipline on him, the Southern District gave the respondent notice of the proceeding, by order to show cause. He was given the Statement of Charges and an opportunity to respond. He availed himself of that opportunity, and submitted a 27-page declaration. With the annexed exhibits, his submission was almost 900 pages long. He will have the chance to defend the charges against him at a full evidentiary hearing in the Southern District before that court imposes final discipline. The respondent has cited no authority for the proposition that the procedure followed in that forum prior to imposing interim discipline did not comport with due process.

Similarly unpersuasive is the respondent's argument that the Southern District's interim determination cannot form the basis for this Court to impose reciprocal discipline at this time. The applicable rule, 22 NYCRR 1240.13, does not require that a foreign order of discipline be final in order for this Court to impose reciprocal discipline. The rule requires proof that the attorney has been "disciplined" by a foreign jurisdiction (*id.* § 1240.13[a]), and provides that after the attorney has had a chance to be heard, upon review of that jurisdiction's "order" and the record of proceedings there, if relevant, this Court may discipline the attorney for the misconduct committed

MATTER OF LIEBOWITZ, RICHARD P.

in the foreign jurisdiction (*id.* § 1240.13[c]). Notably absent from the text of the rule is any requirement that the foreign jurisdiction's discipline, or the order reflecting it, be final.

Where, as here, the foreign jurisdiction has afforded an attorney an opportunity to be heard and determines that, in light of the nature and seriousness of the charges, the strength of the record supporting those charges, and the risk and danger of recurrence, an interim suspension is necessary to protect the public interest, this Court may, upon review of the order and record of the proceedings, reciprocally impose an interim suspension (*see Matter of Perskie*, 158 AD3d 19; *Matter of Hummel*, 99 AD3d 133; *Matter of Gray*, 110 AD2d 672, *affd* 67 NY2d 440).

We have considered the remaining arguments the respondent has raised as to why reciprocal discipline should not be imposed upon him at this time based on the Southern District's interim order, and conclude that they are without merit.

Under the circumstances of this case, we conclude that an immediate suspension is warranted. The respondent's misconduct in litigation has at times endangered his clients' prospects of recovery, and put his adversaries to needless expense. He has shown disrespect for the courts, as is demonstrated by his admitted conduct before Judge Seibel in the *Berger* case. His actions in that case included multiple misrepresentations, defiance of her orders, and explicit questioning of her authority as she attempted to probe the truth of his asserted reason for failure to appear at a conference. As this Court stated in *Matter of Colihan* (171 AD3d 96, 101):

> "[T]he respondent's conduct—involving three separate acts of deliberate misrepresentation to a court—is a direct and significant harm to the judicial system, to the legal profession at large, and to the public. We cannot stress strongly enough that courts insist that the attorneys appearing before them be both zealous in their representation of their clients and honest in their representations to the courts. Failure to adhere to basic standards of honesty may be addressed not only by the imposition of financial sanctions (*see* 22 NYCRR part 130) but through the disciplinary process."

In addition, despite his recent attempts at introspection and contrition, the respondent nonetheless minimizes frequent behavior that made a mockery of orderly litigation processes by attributing it to "sloppiness" and "administrative failures." The existing record from the Southern District supports its conclusion that, given respondent's history of repeated disregard for court orders, recurrence of his misconduct is likely. We find that the respondent has engaged in conduct immediately threatening the public interest and his immediate suspension from the practice of law is warranted.

November 3, 2021                                                                                              Page 13.

MATTER OF LIEBOWITZ, RICHARD P.

LASALLE. P.J., MASTRO, DILLON, CHAMBERS and MILLER, JJ., concur.

ORDERED that pursuant to 22 NYCRR 1240.13, the respondent, Richard P. Liebowitz, is suspended from the practice of law in the State of New York, effective immediately, and continuing until further order of this Court; and it is further,

ORDERED that during the period of suspension and until further order of the Court, the respondent, Richard P. Liebowitz, shall comply with the rules governing the conduct of disbarred or suspended attorneys (*see id.* § 1240.15); and it is further,

ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of the Court, the respondent, Richard P. Liebowitz, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

ORDERED that if the respondent, Richard P. Liebowitz, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).

ENTER:

*Maria T. Fasulo*

Maria T. Fasulo
Acting Clerk of the Court

SUPREME COURT, STATE OF NEW YORK
APPELLATE DIVISION SECOND DEPT.
I, MARIA T. FASULO, Acting Clerk of the Appellate Division of the Supreme Court, Second Judicial Department, do hereby certify that I have compared this copy with the original filed in my office on November 3, 2021 and that this copy is a correct transcription of said original.
IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of this Court on November 16, 2021

*Maria T. Fasulo*

November 3, 2021                                                                 Page 14.
MATTER OF LIEBOWITZ, RICHARD P.